# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRINCIPAL LIFE INSURANCE    )
COMPANY,                    )
                            )
            Plaintiff,      )
                            ) C.A. No. 08-488-MPT
v.                          )
                            )
LAWRENCE RUCKER 2007        )
INSURANCE TRUST,            )
                            )
            Defendant.      )


                    Thursday, August 16, 2012
                    1:29 p.m.
                    Teleconference in Chambers

                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE MARY PAT THYNGE
         United States District Court Magistrate Judge


APPEARANCES:

            DRINKER BIDDLE & REATH, LLP
            BY:  KAREN V. SULLIVAN, ESQ.
            BY:  JASON P. GOSSELIN, ESQ.
            BY:  THOMAS J. DOWNIE, ESQ.

                        Counsel for the Plaintiff

            POTTER ANDERSON & CORROON, LLP
            BY:  JOHN E. JAMES, ESQ.

                -and-

            PROSKAUER ROSE, LLP
            BY:  JOHN R. FAILLA, ESQ.

                        Counsel for the Defendant

1  insurance transaction documents in the course of

2  insurance coverage cases.  In fact, as we cited

3  in our letter, Principal has made these very same

4  arguments when insureds asked it to produce

5  evidence about other policies or other STOLI

6  issues or the like.

7          And so what's good --

8          THE COURT:  That is --

9          MR. FAILLA: -- for the goose is good

10 for the gander.

11         THE COURT:  I understand what you're

12 saying, John.  Then the issue, the argument that

13 you're making there is saying, Okay.  On the

14 insurance end of this, the fact that they may

15 have issued other policies, the argument being

16 made, Well, they knew what was going on.  And

17 they were still issuing these policies and now

18 are trying to hide behind the STOLI statute.

19         And I understand your arguments

20 there.  I certainly read through the cases that

21 you provided, including the New York cases, which

22 I think New York has a different standard,

23 though, for determining STOLI than Delaware does.

24         At least from what I read, not just

38

1    in the Phoenix Life Insurance Company case, but I

2    also read a case that post-dated Phoenix.  It's

3    Bernstein versus, by the way, Principal Life

4    Insurance Company.  Found at 2010 Westlaw 4922093

5    in which a Magistrate Judge came down with the

6    same conclusion of not allowing the certain

7    evidence that's being requested or certain

8    information that Principal is now requesting in

9    this case to be produced.

10              In fact, I think in that case -- let

11   me just see.  Principal was seeking to compel

12   documents concerning 12 other purported STOLI

13   policies in which a particular entity

14   participated.  Although the argument was made to

15   show the intent to defraud pursuant to Federal

16   Rule of Evidence 404(b), it also would go to a

17   pattern-type argument as well.

18              Let me say this:  I don't see how

19   two years' worth of bank statements are going to

20   be helpful at all in this circumstance.  I just

21   don't understand it.  And to the extent that my

22   understanding is the request was made, and that

23   is what I want to confirm with Principal and that

24   is:  Previously you subpoenaed and got bank

1    statements from each of these parties, or not

2    from each of these entities or not --

3               MR. GOSSELIN:  Well, what Mr. Failla

4    said is true to a point.  We subpoenaed the

5    non-parties and asked for documents relating to

6    the payment of the premium.

7               We got -- you know, we got, for

8    example, the United Bank check from Mr. Aery, but

9    we didn't actually subpoena the banks themselves.

10   And, I mean, if I had to -- I mean, obviously

11   we'd like to have the bank records, because I

12   think the money trail matters.

13              If the Court thinks that it's not,

14   there's no way it would ever be relevant.  Well,

15   then I understand that.

16              The issue on the other transactions,

17   though, I think that, one, I think it is

18   relevant.  And although I didn't handle the case

19   for Principal up in New York, my partner handled

20   it.

21              I can tell you that my basis for

22   asking for it here is, you know, Third Circuit

23   case law that says that evidence of a pattern can

24   be admissible.  All of these -- I mean, I don't

40

1    agree with Mr. Failla's arguments as to what he

2    would need to do to rebut the inference.

3              I think he's got -- his own witness

4    will testify why they bought the beneficial

5    interest.  In each of these cases, GIII required

6    the seller of the beneficial interest to certify

7    that they didn't lie on the application.

8              Now, I think GIII knew they were

9    lying on the application and in the

10   certification.  But all of that is something that

11   can be dealt with at the time of trial if there's

12   an issue of relevance or if we're trying to put

13   too much into the record, you know, more than

14   what the Court thinks is appropriate.

15             That can be dealt with later on.  It

16   really isn't a discovery issue.  The burdensome

17   issue, I understand that.  That's why I'm trying

18   to narrow it so it's not so much of a burden.

19             MR. FAILLA:  Your Honor, this is

20   John Failla again.  It isn't just a trial issue.

21   It is a discovery issue.

22             Because certainly at the time that

23   Mr. Gosselin tries to introduce one of these

24   documents at trial, you're certainly not going to

1   take kindly to one of us standing up saying, Your

2   Honor, we need to depose five non-parties in

3   order to explain that document.  I mean,

4   obviously you know, we need --

5            THE COURT:  Well --

6            MR. FAILLA:  We need to be able to

7   defend ourselves against those points.

8            THE COURT:  Okay.  Counsel, you can

9   stop right there.

10           The first question that the Court

11  has to address, quite frankly, is relevance.  And

12  that's the first issue.

13           Now, relevance is a broad term and

14  can be expanded across the board.  And I don't

15  think everything that could arguably, or

16  potentially or could be potentially useable at

17  some point in time is necessarily relevant.

18           One of the things that was pointed

19  out by the cases, including, let me see, Judge

20  Farnan, I think decided in one of the cases was,

21  you know, the fact that on the issue of when an

22  insurance claim was denied and what type of

23  information for them to also prove a pattern of

24  behavior or a scheme or an approach to it.

1          And the Court in, I think it was the

2    TRT/FTC Communications case, which was Judge

3    Farnan.  And I realize it dealt with a different

4    issue, but I think it's analogous here.

5          And, you know, the Court made the

6    determination that in the end what was being

7    asked for was not relevant and the burden of

8    production is too great.  There's got to be a

9    balancing approach done by the Court in making a

10   determination.

11         And the requesting of what you did,

12   what an insurance company did and how it handled

13   other like policies was found not to be relevant

14   by Judge Farnan.  I think also for that reason,

15   for the reason that's been brought up by

16   Mr. Failla, and that is, you now are trying a

17   case within a case.

18         And that's the concern that I have

19   with the request, especially the request, the

20   second request, which even if narrowed, we're

21   still facing the same thing.  I mean, to make the

22   argument that they relate to relationship among

23   the alleged STOLI participants in a pattern of

24   procuring policies pursuant to similar

43

```
 1    arrangements would not prove whether the insured
 2    here or there was what happened here.
 3              It goes to show -- maybe it doesn't
 4    go to show what happened here and there's no
 5    indication of the documents pertaining to other
 6    policies or other things that were done other
 7    than the policy is relevant to the issues that
 8    happen to be involved in this case.
 9              I was trying to figure out from the
10    standpoint of the bank records how this was
11    necessarily going to be helpful in showing that
12    the money that Mr. Aery said he got, he got and
13    the source of that money.  And I'm not certain
14    any earlier bank records are necessarily going to
15    help on that.  Other documents might have, but I
16    don't think the bank records are.
17              So I don't find what's being
18    requested here, that because they buy a
19    beneficial interest in a policy or obtain it
20    nine, three months or two months or one month or
21    five days in other matters necessarily goes to
22    show that, A, the insured didn't pay for this.
23    B, it was part of a scheme to be able to defraud.
24              The Court basically said that, you
```

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRINCIPAL LIFE INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HERBERT WEISS, as Trustee of the Sandra | : | No. 09-cv-00840 |
| Auerbach Weiss Family Trust | : | |

## ORDER

AND NOW, this 25st day of January 2010, upon consideration of Defendant's Motion to Compel Full and Complete Responses to Interrogatories and Document Production Requests and for Protective Order (Doc. No. 28), Plaintiff's Response in opposition thereto (Doc. No. 32), and Plaintiff's January 11, 2010 letter reporting recent decisions (Doc. No. 33), it is hereby ORDERED that Defendant's Motion is DENIED.

Defendant seeks information relating to:

a) the basis for [Plaintiff's] contentions in the Complaint; b) the investigation undertaken by [Plaintiff] prior to filing the Complaint as to the existence of the alleged misrepresentation and/or STOLI transactions, including, but not limited to the specific "incriminating" information referenced by [Plaintiff's] counsel; c) reinsurance communications relating to the Policies; d) documents from the files of [Plaintiff's] representatives with knowledge of the facts in this Action; e) documents revealing [Plaintiff's] participation in other transactions with the same indicia of STOLI as [Plaintiff] has alleged exists in this Action.

(Def. Mot. ¶ 15.)  On January 4, 2010, Plaintiff filed supplemental responses to Defendant's "contention interrogatories."  (See Pl.'s Resp., Ex. F.)

In its Motion, Defendant repeatedly emphasizes the similarity between this case and two other pending cases: Principal Life Insurance Company v. DeRose, Civ. No. 08-2294 (M.D. Pa.), and Principal Life Insurance Company v. Minder, Civ. No. 08-5899 (E.D. Pa.).  (See, e.g., Def.

1

Mot. 2 n.3, 3 n.4, ¶ 7, ¶ 10, ¶ 42.)  As Defendant notes, defendants in those cases filed motions to compel that are similar to the instant Motion.  (Id.)  On January 6 and 11, 2010, Chief Judge Harvey Bartle, III, and Magistrate Judge Martin C. Carlson denied defendants' similar motions.  (See Pl.'s Jan. 11, 2010 letter, Exs. A & B.)

This Court independently considers Defendant's Motion to Compel and for a Protective Order.  Upon our own independent review, we deny Defendant's requests and find that Judge Carlson's well-reasoned opinion is equally applicable here.  See Principal Life Ins. Co. v. DeRose, Civ. No. 08-2294, Memorandum Order, Doc. No. 63 (M.D. Pa. Jan. 11, 2010).  First, at this time, Plaintiff has adequately responded to Defendant's discovery requests.  However, Plaintiff is reminded of its ongoing duty to supplement such responses, particularly the "contention interrogatories."  Second, Plaintiff has already produced some documents related to its investigation and is in the process of supplementing such responses.  (See Pl. Resp. 13.) Defendant contends that Plaintiff has claimed a privilege when responding to certain interrogatories, but has not produced a privilege log.  (Id. at 20, 22 (citing Document Requests 23-24, 34; Interrogatories 14-15).)  It is unclear whether Plaintiff has actually withheld any responsive privileged information.  To the degree that Plaintiff has withheld information that is responsive to Defendant's requests because it is asserting a privilege, Plaintiff shall provide a privilege log.  See Fed. R. Civ. P. 26(b)(5).  Further, Plaintiff is again reminded of its duty to supplement such responses with any non-privileged responsive documents.  Third, Plaintiff has represented that there are no specific communications with reinsurers regarding the Weiss policies.  (Pl. Resp. 14 n.5.)  Fourth, the information concerning other possible STOLI transactions is tenuously relevant, would be overly burdensome to produce, and contains highly

2

confidential information.  Therefore, Defendant is not entitled to such discovery in this case.

As Defendant's Motion to Compel is denied, Defendant's request for a protective order until Plaintiff fully responds to Defendant's interrogatories and document requests is moot.

BY THE COURT:

/S/LEGROME D. DAVIS
Legrome D. Davis, J.

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRINCIPAL LIFE INSURANCE** | : | |
| **COMPANY,** | : | **Civil Action No. 1:08-CV-2294** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MARK DeROSE and** | : | |
| **MATTHEW DeRose,** | : | |
| **as Trustees of the JoAnn DeRose** | : | |
| **Family Trust,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

## I.   INTRODUCTION

This is an action brought by Principal Life Insurance Company ("Principal" or "Plaintiff") seeking entry of a judgment declaring that, <u>inter alia</u>, Principal's obligations under one or more policies of insurance issued on the life of JoAnn DeRose were not procured for legitimate purposes.  In particular, Principal alleges that one or more of the policies were part of a so-called stranger originated life insurance ("STOLI") scheme, and that the non-recourse premium financing used to pay for the premiums on the polices was concealed from Principal during the application process.  For this reason, Principal commenced the instant action seeking a declaration that the DeRose policies are void due to a lack of insurable

interest at inception, or on the basis of certain material misrepresentations made during the application process.  (Compl. at ¶¶ 32-38.)

Now pending before the Court is Defendants' motion to compel Plaintiff to provide further responses to written discovery propounded in the above-captioned action.  (Doc. 52.)  Following a telephone conference with the parties to discuss the dispute, and following review and consideration of the parties' letter briefs submitted in support of and opposition to the motion, (Docs. 52, 53, 58, and 60) the motion will be denied.

Although Defendants introduce their motion by providing a detailed narrative regarding the history of strained and ultimately failed communications between the various lawyers engaged for both sides in this dispute, and include intriguing assertions regarding matters such as boxes of documents being purloined from a lavatory before being secreted away to a corporate headquarters in Iowa, review of the parties' submissions reveals that this dispute can fairly be reduced to several broad categories.  Defendants assert that Plaintiff has failed to respond adequately to discovery addressing the allegations in the complaint – discovery that the parties have referred to as "contention interrogatories." Defendants also complain about Plaintiff's responses to discovery requests concerning Principal's investigation efforts, and about Principal's communications

2

with reinsurance companies.  Furthermore, in general, we join in Principal's observation that the core of the instant discovery dispute concerns Defendants' efforts to obtain information about other policyholders.  We do not share Defendants' view, argued vigorously in their letter briefs, that these other transactions concerning other policyholders are relevant to the claims and potential defenses in this case.  Regardless, even if these discovery requests have some arguable relevance to a defense of waiver, we find that the requests are overbroad and unduly burdensome.

Notwithstanding the Court's conclusion regarding the merits of Defendants' motion, the Court recognizes that Principal has proposed a compromise in which it has: (1) offered to allow Defendants to investigate Principal's internal policies that relate to STOLI transactions and non-recourse financing through a deposition of Principal's corporate designee pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; (2) offered to produce additional documents that detail the company's position on premium financing in order allow Defendants to investigate whether Principal's position in this litigation is consistent with its internal policies and procedures concerning STOLI transactions; and (3) agreed to produce limited documents from other policy files, provided that information from other policyholders is limited to policies sold through the Delaware Valley

3

Financial Group ("DVFG").  (Doc. 60, at 3.)  Although Defendants have, to date, found this proposed compromise inadequate, the Court finds that it is a reasonable and narrowly drawn proposal that addresses a number of Defendants' concerns and areas of interest.  Accordingly, we will enter an order requiring that Principal honor the terms of its proposed compromise in the event Defendants properly request the information covered in these three areas.

## II.     Rule 26(b)(1) - Relevance

Rule 26(b)(1) of the Federal Rules of Civil Procedure supplies the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  Issues relating to the scope of discovery permitted under the Rules are to be resolved, almost exclusively, at the discretion of the Court.

Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  A court's
decisions regarding the conduct of discovery will be disturbed only upon a
showing of an abuse of discretion.  Marroquin-Manrizuez v. I.N.S., 699 F.2d 129,
134 (3d Cir. 1983).

The party resisting production bears the burden of persuasion. See Fidelity
And Deposit Co. Of Maryland v. McCulloch, 168 F.R.D. 516, 520 (E.D. Pa.
1996). A party resisting discovery "must show specifically" how the information
requested "is not relevant or how each question is overly broad, burdensome or
oppressive." Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982). The party
resisting discovery also bears the burden of demonstrating the applicability of an
evidentiary privilege, such as the attorney-client privilege or the work-product
privilege, as a bar to discovery. See Schmidt, Long & Assocs. v. Aetna U.S.
Healthcare, Inc.., 2001 U.S. Dist. LEXIS 7145, 2001 WL 605199, at *2 (E.D. Pa.
May 31, 2001).

## III.    **DISCUSSION**

Despite the length and detail of Defendants' letter briefs, it remains
somewhat difficult to identify precisely the interrogatories or document requests to
which Defendants believe Principal has failed to respond adequately.  Instead, it
appears that Defendants are contending wholesale that Principal's responses and

5

production have been inadequate in their entirety – indeed, it is clear that Defendants believe that Principal's discovery responses and pretrial conduct demonstrate bad faith.  As best the Court can tell, Defendants chiefly take issue with the extent of Principal's responses to interrogatories and document requests concerning other life insurance policies that Principal has issued to non-parties, and regarding both Principal's investigation into the DeRose policies themselves, as well as regarding the allegations that Principal made in the complaint regarding STOLI transactions, the secondary insurance market, and premium financing as an indicia of a potential STOLI transaction.  Defendants also clearly take issue with Principal's responses to discovery aimed at probing the insurer's internal investigation of the DeRose policies.  The Court will address these matters below.

**A.    Discovery Targeting Other Transactions and Policyholders**

Defendants candidly acknowledge that a large part of the discovery that they have propounded seeks to discover information related to transactions with other policyholders "in order to determine whether they were STOLI transactions and/or whether Principal sought to set those policies aside as they have in the instant case." (Doc. 52, at 8.)  For example, Interrogatory 19 states:

> Identify each life insurance policy (and any and all documents concerning such policies) sold and/or issued by PLIC during the period January 1, 2006 to the present with

6

> an initial death benefit equal to or greater than $1,000,000,
> which was initially owned by a trust or similar entity and
> concerning which the owner or any party financed or
> borrowed all or any portion of the premiums and which
> was at any time thereafter transferred to an individual or
> entity other than the owner to which the policy was initially
> issued.

(Doc. 52, Ex. A.)  Similar in scope, Interrogatory 25 requests information regarding Principal's participation in premium financing with respect to third parties:

> Identify any and all premium financing programs of third
> parties (including, without limitation, C2 and Concord) or
> internally created, or were reviewed, approved, rejected, or
> utilized by any of its agents or brokers.

(Id.)  Interrogatory numbers 20-25, and Document Requests 21, 22, 25-33 similarly seek information that is entirely unrelated to the DeRose policies themselves, but are instead targeted at unrelated policies that Principal may have issued from 2006 forward.  By way of example, Document Request No. 21 seeks the following:

> Any and all documents supporting, evidencing, referring
> to, relating to or concerning each life insurance policy sold
> and/or issued from January 1, 2006 to present where the
> death benefit under each such policy was for an amount
> equal to or greater than $1 million; or the insured was over
> the age of 60 at the time of issuance; and the owner and/or
> beneficiary was a revocable or irrevocable trust.

7

(Id.)

Defendants contend that discovery like the foregoing "is specifically relevant to defend" against Principal's assertions that such characteristics constitute evidence of a STOLI transaction.  (Doc. 52, at 9.)  We do not agree. Instead, we agree with Principal that the requests themselves, and the production that they would require, persuasively show that the requests seek information that is not relevant to this lawsuit.  As Principal has noted, courts within this circuit and elsewhere have routinely found that discovery of other transactions or litigation in the context of litigation involving insurance policies is not properly discoverable because of its tenuous relevance.  See, e.g., McCrink v. Peoples Benefit Life Ins. Co., 2004 U.S. Dist. LEXIS 23990, at *20-22 (E.D. Pa. Nov. 29, 2004); Kaufman v. Nationwide Mut. Ins. Co., 1997 U.S. Dist. LEXIS 18530, *2 (E.D. Pa. Nov. 12, 1997); Fidelty and Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 525 (E.D. Pa. 1996); see also Retail Ventures, Inc. v. National Union Fire Ins. Co., No. 06-443, 2007 U.S. Dist. LEXIS 83425, at *15-16 (S.D. Ohio Nov. 8, 2007) ("[A]n insurer's conduct regarding the insurance claims of other insureds is of 'no consequence' to the adequacy of its conduct toward the plaintiff.")

In this case, the potential relevance of the discovery Defendants seek

8

concerning other policies seems particularly limited because whether or not the DeRose policies themselves should be deemed invalid does not depend on other policies. This action is about the validity of the DeRose policies and the Court fails to discern how probing the files of more than 1,300 other policies is either relevant to that issue or is reasonably calculated to lead to the discovery of evidence admissible at trial regarding that central issue.

But even if the requests arguably have some tenuous relevance to this case or to Defendants' potential defenses, such as waiver, we find that requiring Principal to respond fully to these requests would not only be unreasonably burdensome but would also require Principal to disclose confidential information relating to other policyholders and agents.[1] Principal has submitted an affidavit from John E. John, Principal's Assistant Director for Client Services, in which he attests that Defendants' discovery relating to other policies implicates more than 1,300 policies and would necessitate the production of approximately 682,000 pages of documents – virtually all of which would be entirely unrelated to the DeRose policies. (Doc. 53, Ex. C, John E. John Declaration at ¶ 3.) In addition to the sheer volume, it would require considerable effort and time to review the

---

[1] The fact that the parties have executed a confidentiality agreement in this case does not obviate concern over the fact that confidential information that the court has already concluded is irrelevant to this case would be disclosed to Defendants and their counsel.

9

potentially responsive documents, and we find no basis for requiring Principal to
respond more fully to these requests given the substantial burden required,
particularly given that the Court finds them to have, at most, limited relevance to
this proceeding.  See, e.g., Leski v. Federal Ins. Co., 129 F.R.D. 99, 106 (D.N.J.
1989) (refusing to require insurer to disclose information regarding the files of
other insureds because, while remotely relevant, the production would be unduly
burdensome and disproportionate in the context of the litigation).  We find that
Principal has persuasively demonstrated that the discovery that Defendants seek to
compel relating to other policyholders and transactions are not relevant within the
meaning of Rule 26 and, even if arguably relevant to a potential defense, are both
overbroad and unreasonably burdensome.  Accordingly, the Court will not compel
Principal to produce further discovery responses or documents concerning
unrelated policies or policyholders.

## B.    Contention Interrogatories

Interrogatory Nos. 3-16 request that Principal identify all factual and legal
bases that support its contentions in the complaint; Defendants refer to these
interrogatories as the "contention interrogatories."  Relatedly, Document Request
Nos. 19 and 20 seek documents relating to Principal's allegations and defenses.
Principal has objected to these requests on the grounds that the discovery is

irrelevant, vague, overly broad, unduly burdensome, and seeks information that is

as readily available to Defendants as it is to Principal.  In its letter brief opposing

Defendants' motion to compel, Principal argues that the contention interrogatories

"are not designed to elicit useful information relevant to the claims in this case,

but appear primarily intended to impose a burden on Principal."  (Doc. 53, at 7.)

The Federal Rules of Evidence allow for the use of contention

interrogatories, but also recognize that it may be inappropriate to compel a party to

answer such interrogatories until the close of fact discovery or even later:

> An interrogatory may relate to any matter that may be
> inquired into under Rule 26(b).  An interrogatory is not
> objectionable merely because it asks for an opinion or
> contention that relates to fact or the application of law to
> fact, but the court may order that the interrogatory need not
> be answered until designated discovery is complete, or
> until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2).  The party objecting to a particular interrogatory "must

show specifically how . . . each interrogatory is not relevant or how each question

is overly broad, burdensome or oppressive." Redland Soccer Club, Inc. v. Dept. of

Army of U.S., 55 F.3d 827, 856 (3d Cir. 1995) (quoting Josephs v. Harris Corp.,

677 F.2d 985, 992 (3d Cir. 1982)). If such a showing is made, the Court has the

authority to grant or deny motions to compel discovery under Fed. R. Civ. P. 37.

The Court has reviewed the so-called contention interrogatories and has

found that, in many cases, they concern allegations in the complaint that are

clearly relating to general, background information regarding the secondary

insurance market, and concern information that is equally available to Defendants

as it is to Plaintiffs.  For example, Interrogatory No. 3 requests an answer to the

following:

> State all facts and legal grounds concerning your
> contention in paragraph 7 of your complaint that "[i]n
> recent years a secondary market has emerged in which
> speculative investors seek to obtain a pecuniary interest in
> life insurance policies on individuals with whom they have
> no prior relationship," and identify each and every
> document that evidences, supports, concerns or relates to
> your contentions, or upon which your contention is based,
> or to which you referred in preparing your answer to this
> interrogatory, and all individuals who possess any
> knowledge concerning such contention, and the substance
> of their knowledge.

(Doc. 52, Ex. B.)  Principal objected on grounds that the interrogatory was overly

broad and because it sought information that exists in the public domain that is

equally available to Defendants.  The Court agrees, and finds that this

interrogatory is plainly overbroad and finds no basis to compel Plaintiff to respond

more fully than it has in its answer.

Other interrogatories do relate more specifically to Principal's allegations

against Defendants, and in responding Principal referred Defendants to the

documents that had previously been produced in discovery, in addition to lodging various objections to the interrogatories. Defendants argue that because Principal provided identical answers to Interrogatory Nos. 3-16, the Court should consider this as "evidence of Principal's wholesale failure and deliberate intention not to comply with the discovery rules." (Doc. 52, at 12.)

Upon consideration, we do not agree with Defendants' interpretation of Principal's responses. We also do not share Defendants' belief that Principal's reference to documents previously produced is either "disingenuous," (Doc. 52, at 13), or flagrantly violative of the Federal Rules of Civil Procedure. In fact, the Rules expressly contemplate that interrogatories may be answered by reference to documents produced, Fed. R. Civ. P. 33(d), and there does not exist a hard and fast rule mandating that the responding party provide an index or other legend to guide the propounding party to locate each and every document, and link it to each and every interrogatory to which it might be responsive.[2]

---

[2] Defendants have clearly communicated their frustration with the amount of discovery received – which they maintain is grossly deficient – as well as with what they describe as Principal's dilatory responses to the discovery propounded. Without minimizing Defendants' feelings about the discovery process to date, there is some irony to Defendants' taking the position that Principal has provided too few documents, while also arguing that Principal should be compelled to guide Defendants through the documents that have been referred to in response to the interrogatories. Principal has represented that of the 4,000 documents produced to date, more than 1,500 documents came from the bank that provided financing for the DeRose policies, and has argued that nearly all of the documents support one of Principal's central contentions that the premiums for the DeRose policies were paid with funds from a premium financing

Furthermore, the Court notes that Plaintiff has supplemented its responses to Interrogatory Nos. 5-9 and 11-14.  As with essentially all of Principal's discovery responses, Defendants urge the Court to conclude that the supplemental responses are entirely inadequate.  Defendants further take issue with the fact that Principal did not supplement a number of the contention interrogatories.  Although the Court appreciates Defendants' views on this matter, the Court does not find that Plaintiff's responses have been inadequate, though they have been limited.  As in all cases, the Court fully expects that Plaintiff will continue its efforts to supplement its responses if, through the course of discovery, Plaintiff identifies additional documents or information that may be further responsive to Defendants' document requests or interrogatories.  However, the Court does not find a basis to compel Plaintiff to provide further answers to the interrogatories than those answers that have been provided to date, including both the reference to documents produced and the supplemental answers that have been given.

### C.    Documents Relating to Principal's Investigation

Defendants next take issue with Principal's objection to producing information or documents relating to its investigation into the allegations in the

---

arrangement.  Principal maintains that it is not obligated to list all of these documents and to inform Defendants as to the facts that may be gleaned from each of them.  The Court agrees.

complaint.  The discovery relating to these requests is contained in Documents

Requests 23, 24, and 34, and Interrogatory Nos. 18 and 19.  Principal objected to

the requests on the basis that the requests are vague, overly broad, unduly

burdensome, seek irrelevant information, and seek proprietary and confidential

information, including information protected by either the attorney-client privilege

or the work product doctrine.  Defendants go so far as to charge that Principal is

engaging in bad faith through its responses to these discovery requests.

     In its letter brief opposing Defendants' motion to compel, Principal notes

that it does not object to producing documents relating to the DeRose policies,

with the exception of any documents protected from disclosure as privileged or

work product.  However, Principal avers that such responsive documents are

contained in the policy file and have already been produced to Defendants'

counsel.  Principal represents that it is also following up on two communications

relating in part to the DeRose file, and is confirming that no other documents

relating to the DeRose policies have yet to be produced.  Principal also argues that

the discovery relating to its investigative efforts was clearly related to Defendants'

bad faith counterclaim, which has since been dismissed, and thus the Court should

not compel further answers to this discovery.  Defendants respond by arguing that

Principal's efforts to identify non-privileged or protected documents within its

possession have been insufficient.

The Court cannot discern exactly what responsive documents Defendants claim have been wrongfully withheld and thus finds no basis to compel further production. With that having been said, the Court agrees with Defendants that it is entitled to non-privileged responsive documents and expects that Principal will continue to supplement its responses if and when it discovers any such additional such documents. But on the basis of the parties' submissions, and Principal's representations regarding the responses that have been made to date, the Court finds no basis to compel further production.

### D. Discovery Regarding Reinsurance Information

Finally, Defendants ask the Court to compel Principal to produce documents regarding the insurer's efforts or attempts to reinsure all or any portion of Mrs. DeRose's insurance coverage under the policies, which was requested in Document Request 8. Defendants argue that such reinsurance information may be relevant "because whether Principal chose to reinsure the Policies speaks to Principal's belief as to the validity of the Policies, and as to any underwriting performed by and knowledge of its reinsurers as to the policies and their issuance, including any information that might form the basis for a waiver by Principal of its right to rescind, and whether Principal or its reinsurers knew or should have

known of the conditions that Principal contends gave it the right to rescind the policy and did not act on them, whether on a timely basis or otherwise." (Doc. 52, at 15.) Principal disputes the relevance of the discovery and maintains that Defendants have failed to articulate how the discovery into reinsurance relates to the claims in this action. Principal also provides citation to cases in which district courts have found that reinsurance information is typically not considered relevant under Rule 26. In addition, Principal asserts that although the DeRose policies were subject to reinsurance, there were no specific communications with reinsurers regarding the DeRose policies. Accordingly, not only does Principal continue to object to the discovery requests on relevance grounds, but has represented that documents with reinsurers regarding the DeRose policies do not exist in any event. Based upon these representations, the Court does not agree with Defendants that Principal should be compelled to provide further answers regarding the discovery. We fail to appreciate the relevance that Defendants claim this discovery has to their potential defenses, and we find that Principal has effectively answered that the insurer does not have documents responsive to the request. For these reasons, we find no basis to compel further answer by Principal.

### E.   Principal's Proposed Compromise

In an effort to resolve the current dispute regarding discovery in this matter,

Principal has proposed the following compromise:

- Allow Defendants to explore Principal's policies regarding STOLI and non-recourse financing through a corporate designee deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).

- Production of additional documents detailing Principal's position on premium financing. Such production would include documents relating to specific finance programs, including both permitted programs and prohibited programs. Such discovery is intended to allow Defendants to investigate whether Principal's position in this action is consistent with its STOLI policies and procedures.

- Production of limited documents for all life insurance policies sold by DVFG.

(Doc. 60, at 3.) Although Defendants have previously rejected Principal's proposal, the Court finds that it is both a workable and reasonable compromise that may permit Defendants to conduct some more limited discovery into the areas it has represented it wants to explore regarding Principal's insurance practices and policies. To the extent that Defendants elect to conduct such discovery, the Court will direct that Principal honor the terms of its proposed compromise in these three areas. In all other respects, Defendants' motion to compel will be denied.

## IV. ORDER

AND NOW, upon consideration of Defendants' motion to compel Plaintiff to produce further discovery responses (Doc. 52); and upon consideration of the

competing briefs and argument offered in support of and opposition to Defendants' request; and for the reasons set forth in the within memorandum, IT IS HEREBY ORDERED THAT the motion to compel is DENIED.

To the extent Defendants elect to conduct discovery consistent with that which Principal proposed as a compromise, as set forth in Principal's final letter brief (Doc. 60, at 3) and summarized above, and to the extent Defendants properly request such discovery from Principal, IT IS HEREBY ORDERED THAT Principal shall honor the terms of its proposed compromise and work to schedule any Rule 30(b)(6) deposition and timely produce responsive documents consistent with the terms of the proposed compromise.

*/s/ Martin C. Carlson*_____
Martin C. Carlson
United States Magistrate Judge

Dated: January 11, 2010

19