IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL SASONI 2007-1 INSURANCE TRUST, a Delaware statutory trust, and MICHAEL SASONI 2007-2 INSURANCE TRUST, a Delaware statutory trust, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN GENERAL LIFE INSURANCE COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) C.A. No. 09-cv-00979-GMS <br> ) <br> ) REDACTED VERSION <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT'S REPLY IN SUPPORT OF OBJECTIONS
TO PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE**

**Jason A. Cincilla** (No. 4232)
**Marc J. Phillips** (No. 4445)
MANION GAYNOR & MANNING
1007 North Orange Street, 10th Floor
Wilmington, Delaware 19801
Telephone: (302) 657-2100
jcincilla@mgmlaw.com
mphillips@mgmlaw.com

**Michael D. Mulvaney** (*pro hac vice*)
**David P. Donahue** (*pro hac vice*)
**John A. Little, Jr.** (*pro hac vice*)
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama 35203
Telephone: (205) 254-1000
mmulvaney@maynardcooper.com
ddonahue@maynardcooper.com
jlittle@maynardcooper.com

*Attorneys for American General
Life Insurance Company*

Original Filing Date: 4/24/14
Redacted Filing Date: 5/1/14

Defendant American General Life Insurance Company respectfully submits this reply in support of its objections to Plaintiffs' summary judgment evidence. [D.I. 132]. Rush Affidavit Exs. 11 and 12 [D.I. 129], Burgess Affidavit ¶¶ 13-17 [D.I. 124]; Hager Affidavit ¶ 12 [D.I. 125]; Revkin Affidavit [D.I. 128]; Heller Affidavit [D.I. 126]; and Althea Ashman's revised deposition testimony [D.I. 132, Ex. A] should be disregarded for purposes of American General's summary judgment motion.

### A. Ashman's Revised Testimony Should Not Be Considered on Summary Judgment.

Regardless of Plaintiffs' reason for submitting Ashman's errata sheet to the Court, it has no place in the summary judgment record and should be excluded accordingly. Plaintiffs' assertion that they merely offered the errata sheet as part of an objection to American General's refusal to cite the "corrected" version of Ashman's testimony is a complete mischaracterization of the record. Nowhere in Plaintiffs' objections to American General's summary judgment evidence [D.I. 122] did Plaintiffs ever suggest that the basis for their objection was American General's omissions of Plaintiffs' self-serving errata sheet. In their briefing, Plaintiffs actually moved the Court to exclude the portions of Ashman's testimony based on Rule 403 because the questioning was supposedly improper. [D.I. 122 at 6]. Plaintiffs' motion stated, "AG should not be permitted to rely on the objectionable, confusing and misleading line of questioning about the GIII Accumulation Trust on summary judgment because it will not be admissible at trial." [D.I. 122 at 8]. The only reasonable interpretation of their motion was that Plaintiffs were objecting to American General offering testimony that they believed resulted from improper questions.[1]

---

[1] As American General highlighted in its response brief, [D.I. 150], this objection is baseless because there was nothing improper or confusing about the questions. Questions like, "███████████████████████████████████████" and "███████████████████████████████████," Ashman Tr. at 38., obviously are not prohibited or inherently confusing.

Neither the Court, nor American General could have fairly understood their motion to be a simple objection to the use of the uncorrected testimony as they now contend. [*See* D.I. 154 at 1.]

Thus, when Plaintiffs quoted extensively from Ashman's revised transcript, American General rightly believed that Plaintiffs were asking the Court to substitute Ashman's errata sheet for her original testimony. American General, therefore, demonstrated both in its response to Plaintiffs' objections and in this motion, that under Third Circuit precedent Ashman's errata sheet should be excluded from the summary judgment record. *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 267-68 (3d Cir. 2010). American General had no obligation to cite a version of Ashman's testimony which had been thoroughly and substantively retailored in order to support Plaintiffs' summary judgment position. Instead, Ashman's errata sheet should be excluded in its entirety because the Rules do not condone blatant attempts to rework and redraft deposition testimony to create an issue of fact on summary judgment. [*See* D.I. 132 at 3-5.]

**B. The ███████ Has No Connection to Delaware's Insurable Interest Requirements or the Procurement of Sasoni's Policies.**

Plaintiffs' theory of relevance for the ███████ (Rush Aff. Ex. 11, 12 [D.I. 129]; Burgess Aff. ¶¶ 13-17 [D.I. 124]; Hager Aff. ¶¶ 12 [D.I. 125]) entirely omits any connection between the evidence and Delaware law or the Sasoni Policies. Given the total disconnect between this evidence and the facts of the case, American General's objection to this evidence should be sustained.

**1. The ███████ Is Not Relevant to an Insurable Interest Dispute Governed by Delaware Law.**

Despite Plaintiffs' apparent wish, this case does not present abstract questions about the generic operation of the life settlement market or its overall legitimacy. Having witnesses offer

2

statistics about other life insurance policy purchases by nonparties and identify the so-called major players in the life settlement market will never prove anything about the procurement of the Sasoni Policies or the creation of the Sasoni Trusts. All of this evidence does not move the needle one way or the other regarding whether the *Sasoni* Policies are supported by a valid insurable interest under *Delaware* law. Neither can evidence of a non-party ▇ subsidiary's investment activities ever change whether an insurable interest existed at the time the Sasoni Policies were purchased, nor can it waive the absence of an insurable interest. Thus, the ▇ ▇, which has nothing to do with Delaware, the sale of any policies in Delaware—especially the Sasoni Policies, or the application of Delaware law has no bearing on the issues in this case. Given its negligible probative value and the extreme prejudice that would occur if this juror-confusing evidence were admitted at trial, Plaintiffs have not carry their burden to demonstrate that it should be considered on summary judgment. *See* Fed. R. Civ. P. 56(c)(2); *Knopick v. Downey*, 2013 WL 1882983, at *4 (M.D. Pa. May 6, 2013) ("[T]he party relying on the evidence must demonstrate that such evidence is capable of admission at trial before it can be considered by the court on summary judgment.").

Even if Plaintiffs could show that the purchase and sale of life insurance policies by ▇ affects an insurable interest analysis under Delaware law (which they cannot), Plaintiffs still would lack a necessary prerequisite to the admissibility of this evidence: similarity between the procurement and purchase of the Sasoni Policies by the Sasoni Trusts and the procurement of policies later sold by ▇ to nonparty ▇ subsidiaries. *See* 22 Fed. Prac. & Proc. Evid. § 5170.2 (2d ed.) ("Courts generally require that similar incidents be relevant, not too remote, and sufficiently similar."). Plaintiffs' bald assertion that if the policies acquired by ▇ were properly acquired, then so were the Sasoni Policies necessarily

3

assumes that all of these policies were purchased in the same manner. Yet, no evidence is offered that sheds any light on any ████ policy. Plaintiffs' own expert witnesses have even testified that ████████████████████████████████████████████ ████████. *See* Burgess Aff. at ¶ 16; Hager Aff. at ¶ 12. Thus, not only does the ████ ████████ lack any relationship to Delaware's insurable interest requirements, Plaintiffs also have failed to establish that these other transactions are even similar to the procurement and sale of the Sasoni Policies. Admitting evidence of these transactions at trial, therefore, would do nothing more than confuse the issues and greatly prejudice American General. *See In re CompuDyne Corp.*, 255 F. Supp. 1004, 1008 (E.D. Pa. 1966). Because this evidence would never be admissible at trial, it should not be considered on summary judgment. *See* Fed. R. Civ. P. 56(c)(2).

### 2. The ████████████ Is Not Relevant to the Meaning or Materiality of the Phrase "████████████."

Plaintiffs' position that the ████████████ is relevant to establish the meaning of the term "████████████" also wholly ignores American General's actual argument about the nature of Sasoni's misrepresentations. American General has explained repeatedly that "████████ ████████" does not mean purchasing policies at the behest of third party investors with no intention of ever using the policies to benefit one's own family. ████████████████████████ ████████████████████████████████████████████████████████. [*See* D.I. 121 at 6.; *see also* Hager Aff. ¶¶ 16-23; Burgess Aff. ¶¶ 18-23]. The ████████████ in no way informs Sasoni's true reason for insurance because it will never change Sasoni's own understanding of the phrase "████████████." Furthermore, Plaintiffs have offered no evidence that the insureds in the policies referenced in the ████████████ would have characterized their reason for insurance as some form of "████████████." Thus, the ████████████ proves nothing more

4

than a fact that is not in dispute in this litigation—that life insurance policies are purchased and sold on the secondary market. The identity of those purchasers clearly cannot change the meaning of the words ▓▓▓▓▓▓▓. Because this evidence does not make it more or less likely that Sasoni would characterize his plan to purchase life insurance on behalf of third parties as ▓▓▓▓▓▓▓ American General's objection to this irrelevant evidence should be sustained.

Similarly, Plaintiffs' argument that the ▓▓▓▓▓▓▓ proves that Sasoni's misrepresentations were actually immaterial to American General is nothing more than Plaintiffs' lawyers' unsupported conjecture. Plaintiffs imply that in light of the ▓▓▓▓▓▓▓ a jury could find that American General actually encouraged insureds to buy policies in order to sell them. This implication has been directly and repeatedly contradicted by the evidence American General has offered in support of its motion for summary judgment. [*See* D.I. 112 at 19-20.] Conversely, Plaintiffs have no evidence to support their theory that American General was being encouraged by sister companies to issue policies to insureds who planned on selling them on the secondary market. An unsupported theory concocted by Plaintiffs' lawyers does not justify admission of highly prejudicial evidence regarding a nonparties' activities. The ▓▓▓▓▓▓▓, therefore, should be excluded from the summary judgment record.

### C. Plaintiffs' Disregard of Rule 26(a) Demands Exclusion of Revkin's and Heller's Affidavits.

All of the excuses Plaintiffs offer for their failure to identify Casey Revkin and Grant Heller as potential witnesses should be rejected and the testimony from these witnesses must be excluded. The prejudice caused by their last minute disclosure cannot be cured in the time remaining before trial.

5

Plaintiffs, in effect, blame American General for their own failure to timely identify Revkin and Heller in their initial disclosures by arguing that American General should have realized that Plaintiffs might use them as witnesses. Rule 26's initial disclosure requirements, however, exist to combat these very types of "gotcha" litigation tactics. *Hadley v. Pfizer Inc.*, 73 Fed. R. Serv. 3d 1046 (E.D. Pa. 2009) ("Among the many purposes of discovery is 'to remove surprise from trial preparation, and allow the parties to evaluate and resolve their disputes.'" (citations omitted)). The only "exception" to the disclosure requirement exists when the identity of a witness a party may use to support its claims or defenses has "otherwise" been made known during the discovery process. Fed. R. Civ. P. 26(e)(1)(A).[2] Plaintiffs claim that they made Revkin's and Heller's identities known because these names appeared in the thousands of pages of documents produced by the Plaintiffs and the GIII Accumulation Trust during discovery and because their names came up during depositions that occurred at the end of the fact discovery period. Courts, however, have rejected attempts to misuse Rule 26(e)'s "otherwise been made known" procedure in this manner.

As one court stated, "the purpose of Rule 26(a) is not furthered by '[r]equiring [parties] to ferret out the names and addresses of potential witnesses listed in hundreds of pages of documents . . . .'" *Wolfe v. Sec'y, Dep't of Corr.*, 2012 WL 6740732, at *1 (M.D. Fla. Dec. 30, 2012) (quoting *Mary Kay, Inc. v. Weber*, 2008 WL 5411369, at *1 (N.D.Tex. Dec. 29, 2008)).

---

[2] Rule 26(e) states,
> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."

Fed. R. Civ. P. 26(e)(1).

Similarly, mentioning names during a deposition—unlike actually calling a witness as a deponent—does not apprise a party that the named party will be used as a material witness. Courts have recognized that notice "otherwise" given pursuant to Rule 26(e)(1)(A) is inadequate where it still requires the "opposing party to guess another party's intentions." *Kullman v. New York*, 2009 WL 1562840, at *7 (N.D.N.Y. May 20, 2009). While the names Heller and Revkin came up in a deposition, American General had no way of knowing that these were also witnesses Plaintiffs intended to use to support their case because they were not disclosed in Plaintiffs' initial disclosures. In fact, American General was entitled to trust that the Plaintiffs' representations during discovery regarding their potential witnesses were "complete and made in good faith." *Hadley*, 73 Fed. R. Serv. 3d 1046. Thus, mentioning a name in a deposition or a document did not satisfy Plaintiffs' obligations under Rule 26(a).[3]

Furthermore, Plaintiffs cannot seriously contend that they had no reason to disclose Heller's and Revkin's identities until after American General filed its summary judgment briefing. The details surrounding the formation of the Sasoni Trusts were always going to be a central component of this case in light of the Delaware Supreme Court's *Price Dawe* decision. *See PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana Bank & Trust Co.*, 28 A.3d 1059, 1078 (Del. 2011) (requiring evaluating of circumstances surrounding creation of trust during insurable interest analysis). Accordingly, Plaintiffs should have disclosed the identities of the individuals they now call the "███████████" at the company that Plaintiffs admit assisted in the formation of the Trusts. [*See* D.I. 123 at 5].

---

[3] Similarly, it makes no difference that American General had deposed one of these witnesses in another action. The point of Rule 26(a) is that American General be apprised of the witnesses Plaintiffs "may use to support [their] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Regardless of whether American General knew that Heller and Revkin existed, Plaintiffs did not inform American General that they may use these individuals as witnesses to support their case.

7

Plaintiffs also wholly ignore the tardiness of their supposed disclosure. An eleventh hour disclosure of these witnesses after the discovery cut-off date is untimely by any standard. *See Clark v. Wilkin*, 2008 WL 2388634, at *2 (D. Utah June 11, 2008) ("Plaintiffs' supplementation of the list of persons having discoverable information was untimely as the fact discovery deadline had already passed."); *see also Ashman v. Solectron, Inc.*, 2010 WL 3069314, at *4 (N.D. Cal. Aug. 4, 2010) (stating that supplemental disclosure after discovery had closed was untimely). Given that Plaintiffs should have disclosed Heller and Revkin as potential witnesses while discovery was still open, Plaintiffs are subject to having this evidence excluded as mandated by Rule 37. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . .").

Under Rule 37, Heller's and Revkin's testimony must be excluded unless Plaintiffs' failure to disclose was substantially justified or harmless. *See* Fed. R. Civ. P. 37. Neither exception applies here given the current stage of the case. While in some circumstances reopening discovery to allow American General to take Heller's and Revkin's deposition might cure the prejudice caused by Plaintiffs' failure to make a full and fair disclosure in their initial disclosure, the current trial schedule forecloses this option. The Parties Joint Pretrial Order is due on May 30, 2014 and Plaintiffs' draft to American General is due in a matter of days. Given these approaching deadlines, reopening discovery to take Heller's and Revkin's depositions would be highly disruptive to the preparation of this case for trial. As Judge Robinson explained,

> Allowing defendants to support their summary judgment positions with previously unidentified fact witnesses is clearly prejudicial to plaintiff. Defendants offer to allow depositions of these witness to cure this prejudice. However, re-opening the fact record through depositions at this late stage would impede the court's ability to manage its docket. First the fact record would be re-opened, and then the summary judgment briefs would need to be supplemented to

8

account for the revised record. This is impractical (not to mention disorderly and inefficient) at this late stage. In every trial there comes a time when discovery must be closed for the issues to be resolved through summary judgment and/or trial. In the case at bar, that time has long since passed.

*Stambler v. RSA Sec., Inc.*, 212 F.R.D. 470, 472 (D. Del. 2003).

Judge Robinson's reasoning is equally applicable here. Plaintiffs have no excuse for their failure to disclose witnesses that they knew had information regarding one of the key issues in the case until after discovery had closed. The prejudice created by their last minute use of these witnesses to support their case cannot be cured without severe disruption to the trial calendar. Under Rule 37 then, American General's objection to Heller's and Revkin's affidavits should be sustained.

## CONCLUSION

For the foregoing reasons, American General respectfully requests that the Court sustain its objections to Plaintiffs' summary judgment evidence.

Respectfully submitted,

MANION GAYNOR & MANNING LLP

By: */s/ Marc J. Phillips*
Jason A. Cincilla (No. 4232)
Marc J. Phillips (No. 4445)
1007 North Orange Street, 10th Floor
Wilmington, Delaware 19801
(302) 657-2100
jcincilla@mgmlaw.com
mphillips@mgmlaw.com
*Attorneys for Defendant*
*American General Life Insurance Company*

OF COUNSEL:

MAYNARD COOPER & GALE, PC
Michael D. Mulvaney
David P. Donahue
John A. Little, Jr.
1901 Sixth Avenue North, Suite 2400
Birmingham, AL 35203
(205) 254-1000

10

## CERTIFICATE OF SERVICE

I hereby certify that the following document was served via e-mail and CM/ECF to the following counsel of record:

POTTER ANDERSON & CAROON LLP
David J. Baldwin (No. 1010)
John A. Sensing (No. 5232)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19801
(302) 984-6017
dbaldwin@potteranderson.com
jsensing@potteranderson.com
Attorneys for Plaintiffs

PROSKAUER ROSE LLP
John E. Failla
Elise A. Yablonski
Nathan Lander
11 Times Square
New York, New York 10036
(212) 969-3000

/s/ Marc J. Phillips
Marc J. Phillips (No. 4445)
*Attorney for Defendant American General Life Insurance Company*